[Civ. No. 13405.   Second Dist., Div. One.   May 14, 1942.]

ROBERT MELVILLE HOSCH, Respondent, v. MAUDE ARLINE HAMPTON, Appellant.

John A. Coleman for Appellant.

Rosecrans & Emme and Joseph R. McGuire for Respondent.

DORAN, J.—In this action to cancel a deed and release, the plaintiff prevailed and defendant appeals.

The pertinent facts as revealed by the record are as follows: Appellant and respondent are mother and son respectively. The appellant worked in a law office in the city of Butte, Montana, for several years and also worked for a period of months in the office of the clerk of a court in Florida. The respondent went to the eleventh grade in school and thereafter worked as a laborer commencing in 1937, except for a period of approximately one and one-half years spent in the United States Navy.

Respondent's father died on July 24, 1928. Respondent received $15,000 from an insurance policy upon the life of his father. In 1932 respondent was living with his then guardian, Miss Nona Dunston, and was then thirteen and one-half years old. Thereafter appellant was appointed guardian of the person and estate of respondent in lieu of Miss Dunston in March of 1932. Appellant received from the former guardian a promissory note in the sum of $12,000 secured by deed of trust upon the real property involved in this litigation.

Respondent resided with the appellant from 1932 until he joined the Navy in August, 1937. In 1935 the guardian acquired the real property involved in this litigation as a result of a compromise agreement with the payors of the promissory note, which said property had secured.

It is stated in appellant's petition (as guardian) for authority to enter into a compromise and adjustment of said promissory note, that petitioner (appellant herein) "is in-

formed that a recent appraisal of said property was made by appraisers of the Home Owners Loan Corporation and a value of $19,500 was placed thereon.''

The respondent joined the United States Navy in August, 1937, and remained in service until April, 1939, at which time he received a medical discharge. During this period of time the appellant continued to draw the sum of $50 per month for the support and maintenance of respondent. Upon leaving the Navy, respondent took up his residence with his mother and remained with her until October 25, 1939.

About October 8, 1939, respondent informed his mother that he desired to get married and needed some money. A loan on the guardianship property was suggested which was later consummated and $1,000 obtained. It was in connection with this transaction that the deed from the son to the mother was executed which is the basis of the within action.

The trial court found the facts to be as follows, viz: ''That it is true that on or about the 10th day of October, 1939, plaintiff herein requested the defendant, Maude Arline Hampton, also known as Maude Hosch Hampton, to negotiate a loan on the above described property, which the said defendant then and there agreed to do.

''That it is further true that on or about the 25th day of October, 1939, the said defendant falsely and fraudulently and with intent to deceive and defraud, represented to the plaintiff herein that she had been successful in negotiating a loan on the said property and that it would be necessary that plaintiff execute a document in order to receive the sum of $1,000 as a loan on the above described real property.

''That it is true that thereupon the said defendant falsely and fraudulently induced the plaintiff herein to execute a grant deed conveying the said above described property to the defendant, Maude Arline Hampton.''

''That it is true that plaintiff herein had explicit faith, confidence and trust in the representations made to him by the said defendant and that the plaintiff relied upon the representations made by the said defendant; that it is further true that plaintiff believed at all times that the document which he had executed was a document necessary to be executed to obtain the said loan on the said property and was not a conveyance or a transfer of the property to the said defendant herein; that it is further true that had the said plaintiff known or suspected that he was executing a

conveyance or transfer of said property to the defendant, plaintiff would not have executed said deed.

"That it is true that all of the foregoing representations made by said defendant to the plaintiff herein were made by the said defendant with the knowledge that at the time of the making of said representations that said representations were false and fraudulent and were in fact made with the intent to defraud and deceive. It is further true that the plaintiff relied upon such false and fraudulent representations without knowledge that they were in fact false or fraudulent."

"That it is true that plaintiff was induced to execute the said deed, a copy of which is attached to plaintiff's complaint marked Exhibit 'A,' by reason of the explicit faith, confidence and trust reposed by him in his mother by reason of the relationship of mother and son existing between the plaintiff and the said defendant, and also the relationship of guardian and ward existing between plaintiff and said defendant; that it is true that plaintiff herein resided with his mother at the time of the execution of said deed and had so resided with her for some time prior thereto.

"That it is true that on or about the 25th day of November, 1939, the defendant, Maude Arline Hampton, also known as Maude Hosch Hampton, falsely, fraudulently and with intent to defraud and deceive, represented to the plaintiff herein that it was necessary that he execute a release to the guardian for the sole purpose of the said defendant being released from her bond and the exoneration of the bond in said guardianship matter; thereupon the said defendant presented to plaintiff a release and requested the plaintiff to sign the same, which the plaintiff did execute; that in executing said release, plaintiff relied upon the representations made to him by his said mother that the said release was for the sole purpose of exonerating the guardianship bond, when in truth and in fact said release was a release and quitclaim of all actions, causes of action, suits and reckonings, accounts, debts, dues and demands whatsoever; that said release is filed in the records of said guardianship proceedings."

It is contended on appeal that the within action is a collateral attack on the judgment in the guardianship proceedings, which had become final, and particularly as to the "matters and things referred to specifically in said Release to Guardian," which, it is urged, became and are *res judicata*.

Appellant relies on *Estate of Ryan*, 177 Cal. 598 [171 Pac.

297], to support the above contention. The case is not in point; nor has additional research produced any authority in support of appellant's argument in this regard.

It is also contended that the evidence failed to preponderate in plaintiff's favor. At most, appellant's argument in this connection discloses the usual conflict in the evidence, the settlement of which rests within the exclusive province of the trial court.

Appellant's final contention, raised for the first time on appeal, that the trial court failed to take an accounting between the parties, is without merit.

For the foregoing reasons the judgment is affirmed.

York, P. J., and Drapeau, J. pro tem., concurred.

White, J., deeming himself disqualified, did not participate in the hearing or determination of this matter.

Appellant's petition for a hearing by the Supreme Court was denied July 10, 1942.